IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| DONALD WAYNE LEWIS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:18-CV-162-Z-BR |
| | § | |
| Director, TDCJ-CID, | § | |
| | § | |
| Respondent. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO DENY PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Donald Wayne Lewis ("Petitioner") filed a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 47th District Court of Randall County, Texas for the second-degree felony offense of burglary of a habitation (enhanced by two prior felony convictions) and the resultant forty-five-year sentence. For the reasons set forth below, the undersigned United States Magistrate Judge recommends that Petitioner's application for federal habeas corpus relief under Section 2254 of Title 28 of the United States Code be DENIED.[1]

## I.    FACTUAL BACKGROUND

The Seventh Court of Appeals clearly summarized the factual background of this case in its November 22, 2016 Memorandum Opinion.

In August 2013, the Randall County Sheriff's Office was investigating

---

[1] When Petitioner filed his petition, he was incarcerated at the Wynne Unit in Huntsville, Texas. (*See* ECF 1 at 1). However, Petitioner was released from confinement in the Texas Department of Criminal Justice—Correctional Institutions Division on December 10, 2019 and is currently reporting for parole. Because Petitioner is currently on parole for the conviction he is challenging in this petition, the undersigned finds that his petition is not moot. *See Jones v. Cunningham*, 371 U.S. 236, 243 (1963); *Merlan v. Holder*, 667 F.3d 538, 539 (5th Cir. 2011) ("Although an applicant need not be in actual physical custody to pursue a habeas action, there must be some type of restraint on the liberty of a person.") (citing *Jones*, 371 U.S. at 238–40); *Cruz v. Johnson*, 273 F.3d 393 (5th Cir. 2001) ("Raising the issue of our jurisdiction *sua sponte*, we first note that we have jurisdiction over this § 2254 appeal because Cruz, as a parolee, remains 'in custody' for federal habeas purposes.") (citing *Jones*, 371 U.S. at 242–43).

several residential burglaries. A victim of one of those burglaries was Gary Pastwa. Mr. Pastwa's residence had been burglarized on August 24th. According to his statement to the police, he was returning home from an errand when he observed a red Suburban, with front-end damage, parked behind his garage. Mr. Pastwa described a "very large black man," wearing a tank top, running to that vehicle, and then attempting to assault him with the vehicle as he departed. Mr. Pastwa was able to provide Randall County authorities with a description of the individual and the vehicle's license tag number. Ownership of the vehicle was traced to Appellant and his wife; however, Mr. Pastwa was unable to identify Appellant in a photo lineup as the person who had burglarized his residence and attempted to strike him with that vehicle.

On August 26th, based on Mr. Pastwa's statement to the police, an arrest warrant was issued for Appellant. A "blue warrant" was also issued based upon the arrest warrant.[3] The following day, Randall County authorities sent an advisory email to the Amarillo Police Department. The email notified the department that an arrest warrant and blue warrant for Appellant had been issued and it identified Appellant's 1997 red Suburban as evidence in the Pastwa burglary and attempted aggravated assault.

On August 28, 2013, sometime between 8:30 a.m. and 3:00 p.m., the residence of Ramona Coffman was burglarized and various items were taken.[4] Among the items taken were pieces of jewelry, two jewelry boxes, a camera, a laptop, an iPad, an undetermined amount of loose change, and two $50 bills. Later that same afternoon, but before learning of the Coffman burglary, Amarillo Police Department officers observed a vehicle matching the vehicle described in the advisory email.[5] The officers activated their patrol car emergency lights and pursued the vehicle until it pulled into a private driveway located in Potter County. Appellant exited the vehicle and claimed to know the occupants of the residence where he had stopped. The owner of that property, however, was not familiar with Appellant or his vehicle and specifically informed the police she did not want the vehicle to remain on her property. Appellant was arrested based upon the existing arrest warrant and blue warrant.

_____

[3] A "blue warrant" is a type of arrest warrant issued by the Texas Parole Board.

[4] The Coffman burglary is the subject of this appeal.

[5] The vehicle in question, a red 1997 Chevrolet Suburban, matched the make, model, color, and license tag number of the vehicle identified by Mr. Pastwa.

Appellant requested that his vehicle be released to his father; however, because it was considered to be evidence in the Pastwa burglary and attempted aggravated assault, it was released to the Randall County Sheriff's Office. The vehicle was subsequently towed from Potter County to Randall County. Although the Amarillo Police Department never formally impounded or inventoried the vehicle, officers did photograph the vehicle and conduct a cursory, non-invasive inspection.[6]

The next day, the Randall County Sheriff's Office obtained a search warrant for the vehicle. The vehicle was then searched and evidence from the Coffman burglary was located. Specifically, the search lead to the recovery of pieces of jewelry, an iPad, a Walmart coin voucher receipt for the exchange of $170.99, photographs of Ms. Coffman's niece and nephew, and a business card that had been torn.

Although Appellant did not contest the validity of the vehicle search warrant, he did seek to suppress evidence found inside the vehicle on the basis that *his arrest* was based upon an illegally issued arrest warrant and blue warrant. Specifically, Appellant contended the affidavit in support of the arrest warrant omitted relevant evidence (i.e., the inability of Mr. Pastwa to identify Appellant in a photo lineup) and it contained material contradictions and misrepresentations (regarding the description of the person seen fleeing from the Pastwa burglary as compared to an actual description of Appellant) which affected the validity of the arrest warrant. Appellant further contended the blue warrant was equally defective because it was based upon the illegal arrest warrant.

Following the conclusion of several suppression hearings, the trial court found the arrest warrant and blue warrant to be defective. The court further found, however, that the vehicle was properly seized because it was evidence of a crime committed in Randall County. In his conclusions of law, the trial judge found as follows:

(1) the arrest warrant was based on insufficient probable cause;

(2) the blue warrant lacked a sufficient basis for its issuance because it was procured based upon the illegal arrest warrant;

---

[6] The APD officers did lean into the vehicle and determined that there was no incriminating evidence in plain view. The officers did not probe the contents of the vehicle.

(3) the vehicle in question was properly stopped and seized based upon a credible report that it had been used in and was evidence of a burglary in Randall County;

(4) the transfer of the vehicle from Potter County to Randall County did not violate Articles 18.10 and 14.03 of the Texas Code of Criminal Procedure;

(5) that if the transfer did violate Articles 18.10 and 14.03 of the Texas Code of Criminal Procedure, such violation did not require the exclusion of the vehicle or items found in the vehicle; and

(6) the reckless misrepresentation contained in the probable cause affidavit used to obtain the arrest warrant does not require the exclusion of the vehicle or items found in the vehicle authorized by the subsequently issued search warrant.

(ECF 9-17 at 2–5; *see* ECF 2 at 9–11; ECF 8 at 3–6).

## II.    PROCEDURAL HISTORY

From September 4, 2013 through July 23, 2014, Petitioner was charged by various indictments in Randall County, Texas with felony offenses for the above-referenced incidents in August 2013. *See State v. Lewis*, Nos. 24,601-A; 24,648-A; 24,655-A; 25,309-A; 25,339-A; 25,340-A. On October 22, 2014, the State provided notice to the Court and Petitioner of its intent to prosecute the above causes in a single criminal action. (ECF 9-3 at 118). However, the State ultimately chose to first and individually prosecute case No. 24,655-A—the August 28, 2013 Coffman burglary of a habitation case. (*See* ECF 2 at 2; ECF 9-10 at 6–7; ECF 9-11 at 53). After obtaining a conviction in that case, the State dismissed the remainder of the cases against Petitioner. Consequently, the reminder of the procedural history will be limited to that case.

On September 18, 2013, Petitioner was charged by Indictment in Randall County, Texas with the second-degree felony offense of burglary of a habitation in violation of Texas Penal Code § 30.02. (ECF 9-3 at 9–10); Tex. Penal Code Ann. §§ 30.02(a)(1), (a)(3), (c)(2) (West 2011). The indictment alleged that on or around August 28, 2013, Petitioner "did then and there intentionally

4

and knowingly enter a habitation without the effective consent of Ramona Coffman, the owner, and therein attempted to commit and committed theft[.]" (*Id.* at 9). The indictment further alleged that Petitioner had two prior convictions for burglary of a habitation, for purposes of enhancing the range of punishment under Texas Penal Code § 12.42. (*Id.*); *see* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2016).

On September 24, 2013, counsel was appointed to represent Petitioner. (ECF 9-3 at 14). From that date through the date of trial, February 9, 2015, Petitioner was represented by numerous appointed or retained attorneys and also acted *pro se*. (*See, e.g., id.* at 74–76, 114–16, 129, 148, 150–51; *see* ECF 9-26 at 63–65). Petitioner's various counsel, as well as Petitioner acting *pro se*, filed multiple motions to suppress, which were heard throughout the proceedings by the district court. (*See, e.g.,* ECF 9-3 at 36–38, 173–77; ECF 9-6 at 6; ECF 9-9 at 6–7). The district court granted in part and denied in part Petitioner's attempts to suppress evidence and entered Findings of Fact and Conclusions of Law on three of the motions presented by Petitioner regarding suppression of evidence. (ECF 9-4 at 101; *see* ECF 9-17 at 1–2).

Petitioner waived his right to a jury trial. (ECF 9-3 at 149). Petitioner's case was called for a bench trial before the 47th District Court of Randall County on February 9, 2015. (*Id.* at 197, 207; ECF 9-11 at 12). On February 10, 2015, after the conclusion of the guilt/innocence phase of the trial, the trial court found Petitioner guilty of burglary of a habitation, as alleged in the Indictment. (ECF 9-12 at 123–24). On February 11, 2015, after hearing evidence on punishment, the trial court found the punishment enhancements to be true and sentenced Petitioner to confinement for a period of forty-five years in the Texas Department of Criminal Justice—Correctional Institutions Division.[2] (ECF 9-3 at 198–99; ECF 9-13 at 123–24).

---

[2] The Judgment indicated that Petitioner entered a plea of guilty pursuant to a plea bargain agreement and a

Petitioner, represented by new retained counsel, filed a direct appeal of his conviction and sentence to the Court of Appeals for the Seventh District of Texas. (ECF 9-3 at 203–06; ECF 9-15; *see* ECF 9-16). Petitioner argued in his first three issues on appeal that the trial court erred in overruling his motions to suppress evidence, and Petitioner argued in his fourth issue that the evidence was insufficient to support his conviction. (ECF 9-15 at 2–3). On November 22, 2016, the Seventh Court of Appeals affirmed the judgment of the trial court, concluding that the district court did not err by denying Petitioner's motions to suppress the arrest warrant, Petitioner's vehicle, and the contents of his vehicle, and the evidence was sufficient to support Petitioner's conviction.[3] (ECF 9-17; *see* ECF 9-18; ECF 9-19); *Lewis v. State*, No. 07-15-00061-CR, 2016 WL 7010567 (Tex. App.—Amarillo Nov. 22, 2016, pet. ref'd) (mem. op., not designated for publication).

Petitioner submitted a Petition for Discretionary Review of the Seventh Court of Appeals' judgment to the Texas Court of Criminal Appeals ("TCCA") on December 16, 2016. (ECF 9-21). The TCCA refused Petitioner's Petition for Discretionary Review on February 15, 2017. (ECF 9-1; ECF 9-20; ECF 9-21); *Lewis v. State*, No. PD-1434-16 (Tex. Crim. App. Feb. 15, 2017). Petitioner did not seek review of that decision by filing a petition for writ of certiorari with the United States Supreme Court.

Petitioner also sought collateral review of his conviction and sentence by filing a petition for state habeas corpus relief on January 26, 2018. (ECF 9-26 at 4–21). On June 13, 2018, the TCCA denied Petitioner's state habeas application on the merits without written order. (ECF 9-

---

plea of true to the first enhancement paragraph—with no reference to a second enhancement paragraph. (ECF 9-3 at 198).

[3] The Court of Appeals also reformed the state court judgment to reflect Petitioner pleaded not guilty to the charged offense and pleaded true to the second enhancement paragraph. (ECF 9-17 at 15; *see* ECF 9-26 at 122).

22; *see* ECF 9-23 – ECF 9-26); *In re Lewis*, No. 88,136-01 (Tex. Crim. App. June 13, 2018). Petitioner did not seek certiorari review by filing a petition with the United States Supreme Court.

Petitioner filed his federal habeas petition on August 29, 2018. (ECF 1). Petitioner also filed a Memorandum in Support of Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus on August 29, 2018. (ECF 2). Respondent filed an Answer with Brief in Support on November 30, 2018, arguing that Petitioner's claim should be denied, and his petition should be dismissed with prejudice. (ECF 8 at 1–23). Respondent also filed an administrative record on December 3, 2018. (ECF 9). Petitioner did not file a reply to Respondent's answer.

### III.    PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United States because he received ineffective assistance of counsel. (ECF 1 at 6; ECF 2 at 4). Specifically, Petitioner contends that his various trial counsel were ineffective because they failed to challenge the admissibility of seized evidence under the correct legal theories. (ECF 1 at 6; ECF 2 at 4).

The Court understands Petitioner to contend that his trial counsel should have argued for suppression of the items seized from inside of his vehicle on legal theories that:

1. the items were not described or set forth in the search warrant for the vehicle and were therefore not authorized to be seized by the warrant;

2. the plain view exception did not apply to allow seizure of the items, because the police did not have probable cause to believe the items were stolen property at the time they seized the items and it was not readily apparent the items were contraband; and

3. the seized iPad was subsequently subjected to an unconstitutional search when law enforcement turned it on and searched its contents to obtain the Apple ID email associated

with the iPad without first obtaining a warrant to do so.

(*See* ECF 1 at 6; ECF 2 at 17–28).

## IV.    STANDARD OF REVIEW

Section 2254 of Title 28 of the United States Code authorizes a federal court to entertain a petition for a federal writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). However, a court may not grant relief on any claim that was adjudicated on the merits in state court proceedings unless a petitioner shows that the prior adjudication:

> 1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); *see Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the "contrary to" clause, a federal habeas court may grant relief if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Brown*, 544 U.S. at 141; *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) ("A state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from

our precedent.'"). A state court's failure to cite Supreme Court authority does not, per se, establish the state court's decision is "contrary to" clearly established federal law: "the state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell*, 540 U.S. at 16.

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Brown*, 544 U.S. at 141; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *McDaniel v. Brown*, 558 U.S. 120, 132–33 (2010) ("A federal habeas court can only set aside a state-court decision as 'an unreasonable application of . . . clearly established Federal law,' § 2254(d)(1), if the state court's application of that law is 'objectively unreasonable.'"); *Wiggins*, 539 U.S. at 520–21. The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable—an "unreasonable" application is different from a merely "incorrect" one. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under the [Antiterrorism and Effective Death Penalty Act ("AEDPA")] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); *Wiggins*, 539 U.S. at 520; *Price v. Vincent*, 538 U.S. 634, 641 (2003) ("[I]t is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner"). "Under the [AEDPA], a state prisoner seeking a writ of habeas corpus from a federal court 'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter,* 562 U.S. 86, 101 (2011)).

This Court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to both implicit and explicit factual findings. *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez,* 274 F.3d at 951 (holding that a full and fair hearing is not a precondition according to section 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying section 2254(d)'s standards of review). A "paper hearing" is sufficient to afford a full and fair hearing on factual issues, especially where the trial court and state habeas court were the same. *Hill v. Johnson,* 210 F.3d 481, 489 (5th Cir. 2000); *Murphy v. Johnson,* 205 F.3d 809, 816 (5th Cir. 2000).

Furthermore, a denial, even though it does not contain a written opinion, is not silent or ambiguous. *See Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits). It is a decision on the merits and is entitled to the federal statutes' standard of deference. 28 U.S.C. § 2254(d); *see also Neal v. Puckett,* 239 F.3d 683, 686 (5th Cir. 2001) (explaining that in the context of federal habeas proceedings, "adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive"). The Supreme Court has reconfirmed that Section "2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*,

562 U.S. at 100. Even if "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id*. at 98.

Moreover, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 101 (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)). This standard is difficult to meet, and the Supreme Court has affirmed that "it was meant to be" so. *Id*. at 102.

Finally, the Supreme Court has also held that review under Section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011). Perhaps more compelling, the Supreme Court made clear that Section 2254(e)(2)—the statutory mechanism through which Congress limited a petitioner's ability to obtain a federal evidentiary hearing (and to expand the federal habeas record)—has no application when a federal court reviews claims pursuant to Section 2254(d), whether or not a petitioner might meet the technical requirements of section 2254(e)(2). *See id.* at 183–86 (showing that the Supreme Court explicitly rejected the proposition that Section 2254(d)(1) has no application when a federal court admits new evidence under Section 2254(e)(2)); *see also id.* at 203 n.20 ("Because Pinholster has failed to demonstrate that the adjudication of his claim based on the state-court record . . . [violated § 2254(d)(1),] our analysis is at an end. We are barred from considering the evidence Pinholster submitted in the District Court that he contends additionally supports his claim.") (internal citation omitted). The Supreme Court reasoned:

> Today, we . . . hold that evidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.

*Id*. at 185. Therefore, this Court must review the reasonableness of the state court determinations

under Section 2254(d), with reference only to the record actually before the state court.

**V.    MERITS**

As noted above, Petitioner's petition contains one ground: that he "received ineffective assistance of counsel because trial counsel failed to challenge, under the correct legal theory, the admissibility of evidence seized in violation of Applicant's right to be free from unreasonable search and seizure as guaranteed under the United States Constitution." (ECF 1 at 6).

**A. Legal Standard for Ineffective Assistance of Counsel Claims**

Claims concerning the alleged ineffective assistance of counsel ("IAC"), whether at trial or on direct appeal, are reviewed under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). First, a petitioner must demonstrate his attorney's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88. A petitioner must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) ("It is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment' that *Strickland*'s first prong is satisfied.") (quoting *Strickland*, 466 U.S. at 687).

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689). "A conscious and informed decision on trial tactics and strategy cannot be the basis for

12

constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752–53 (5th Cir. 2003).

Second, a petitioner must show his attorney's substandard performance prejudiced him. *See Strickland*, 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112. An inquiry into counsel's performance is unnecessary if a petitioner fails to show prejudice. *See Strickland*, 466 U.S. at 697.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of Section 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351–54 (5th Cir. 2010). In other words, under the AEDPA, a federal district court cannot grant a habeas application with respect to an IAC claim that was adjudicated on the merits in state court unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" *See id*.; 28 U.S.C. § 2254(d)(1). The AEDPA does not permit a *de novo* review of state counsel's conduct on federal habeas review of IAC claims. *Harrington* at 101–02, 109. Rather, the court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen*, 563 U.S. at 190; *see Woods v. Etherton*,

13

136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of IAC claims is doubly deferential "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'" and "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'") (quoting *Burt v. Titlow*, 571 U.S. 12, 15, 22 (2013)). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard" but instead "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101.

Here, Petitioner filed a state habeas application challenging the constitutionality of his burglary of a habitation conviction and forty-five-year sentence and alleged the exact same claim that is alleged in the instant federal habeas petition—in fact, Petitioner's sole ground in his state habeas application is presented verbatim in his federal habeas petition. (*See* ECF 1 at 6; ECF 9-26 at 9). The TCCA denied Petitioner's state habeas application without written order, which constitutes an adjudication of Petitioner's claims on the merits. (*See* ECF 9-22); *Ex parte Torres,* 943 S.W.2d at 472. Therefore, this Court's review is limited to whether Petitioner has shown that the TCCA's decision (that Petitioner was not denied effective assistance of trial counsel) was contrary to, or involved an unreasonable application of, clearly established federal law. *See Gregory*, 601 F.3d at 351–54; 28 U.S.C. § 2254(d)(1).

**B. Analysis**

Petitioner asserts that the TCCA issued a decision that was contrary to or involved an unreasonable application of the *Strickland* test for IAC. (ECF 2 at 3–4, 14). Petitioner contends, under the first prong of *Strickland*, that his attorneys' performance was deficient because the attorneys failed to challenge the admissibility of seized evidence under the correct legal theories.

(*Id.* at 17–28). More specifically, Petitioner first argues that his trial counsel were ineffective because they failed to argue for suppression of the items seized from inside the vehicle on the legal theory that those items "were not listed in the affidavit for the search warrant" and thus not authorized to be seized by the warrant. (*Id.* at 17–18). Petitioner explains that "[w]hen [the] Randall County Sheriff's Office procured the search warrant[,] they had no knowledge of the burglary of Ramona Coffman's home. They had no reason, at the time of the search, to believe that the iPad, photos, or Ms. Coffman's jewelry were stolen." (*Id.* at 18 n.2, 19–20). Petitioner asserts that his trial counsel erred by "only challeng[ing] the seizure of Ms. Coffman's property on the basis that the warrants for [Petitioner's] *arrest* were legally insufficient and the transfer of the vehicle to Randall County was unlawful." (*Id.* at 18, 23).

Second, Petitioner asserts that his trial counsel were ineffective because they failed to argue for suppression of the items seized from his vehicle based on the theory that the plain view exception did not apply. (ECF 2 at 17–18). Petitioner contends that the police lacked probable cause at the time the items were seized to believe the items were stolen, because "it was not immediately apparent that the property was contraband." (*Id.* at 18, 23). Petitioner contends that his original attorney, Donald Schofield, filed a motion to suppress on this basis, but that Petitioner's subsequent counsel did not pursue the motion. (*Id.* at 18, 18 n.3).

Third, Petitioner contends that his trial counsel were ineffective because they failed to argue that the iPad should have been suppressed because, after it was seized from Petitioner's vehicle, officers conducted a warrantless search of the iPad by turning it on and viewing its contents. (ECF 2 at 17–18). Petitioner contends that "there were no markings or identifiers on the iPad," and the officer "had to, at the very least, go into the iPad settings and search the email and iTunes content to find Ms. Coffman's email address, which was ultimately used to contact her."

(*Id.* at 20). Thus, Petitioner argues it was not until law enforcement located Ms. Coffman's contact information and contacted her that they learned it had been reported stolen and had probable cause to seize the item. (*Id.*). Petitioner asserts that "it is well-settled that any search into the electronics like the one performed on the iPad would require a warrant." (*Id.* at 20–21). Petitioner explains that his trial counsel "sought to suppress the iPad specifically on the basis that it was not preserved by law enforcement because they turned it over to Ms. Coffman," but "[n]o other challenge to . . . the search of the iPad was made." (*Id.* at 18, 23).

As the Court of Appeals explained, the trial court was presented with numerous suppression motions and it conducted several suppression hearings. (ECF 9-17 at 1, 4; *see* ECF 9-26 at 68–71). The trial court held that the arrest warrant was based on insufficient probable cause, and the blue warrant was deficient because it was procured based on the illegal arrest warrant. (*Id.* at 4–5). However, the trial court concluded that law enforcement had properly stopped and seized Petitioner's vehicle based on a credible report of its use in and evidence of a burglary committed in Randall County. (*Id.*). The vehicle was properly transferred from Potter County to Randall County and then searched pursuant to a valid search warrant. (*Id.*). The trial court concluded that the vehicle and items found inside of it were admissible. (*Id.*). The Court of Appeals also found that law enforcement "acted lawfully in stopping the vehicle and seizing that evidence," and "[n]o incriminating evidence of the Coffman burglary was found until after Randall County obtained a search warrant." (ECF 9-17 at 9, 11).

Attorney Ronald Spriggs, who was one of Petitioner's trial attorneys, submitted an affidavit that was before the state habeas court. (ECF 9-26 at 80–82). As Respondent notes, Mr. Spriggs "demonstrated his familiarly with the case, his awareness of the many Fourth Amendment challenges that had already been raised by prior attorneys, and explained why he made a strategic

16

decision not to raise the issue again based on his belief that the iPad was admissible under the plain

view doctrine, even though it was not specifically listed on the search warrant." (ECF 8 at 11). The

affidavit states:

> When I was retained as trial counsel, many attorneys had already been assisting in the above cases. I reviewed the pleadings of all of these attorneys prior to trial. I was fully aware that several attorneys had filed motions to suppress and that one attorney (Eric Coats) was given a hearing on his motions regarding the search and seizure of the vehicle and items found therein. I was aware that the following issues were raised at that suppression hearing: 1) the sworn complaint provided insufficient probable cause to support the issuance of the arrest warrant, 2) the blue warrant lacked a sufficient basis for its issuance since it was procured based on an arrest warrant that lacked probable cause, 3) the vehicle was searched and seized without a warrant, 4) the vehicle was removed from Potter County to Randall County without any valid legal authority and in violation of Articles 18.10 and 14.03 of the Texas Code of Criminal Procedure, 5) since Articles 18.10 and 14.03 were violated, the vehicle and items found in the vehicle should be excluded under Article 38.23 of the Texas Code of Criminal Procedure, and 6) the reckless misrepresentation contained in the last sentence of the sworn complaint required the suppression of the vehicle or items found inside the vehicle pursuant to the search authorized by the subsequent search warrant.

> The court denied the suppression of the vehicle/contents of vehicle and found that even though the arrest warrant lacked probable cause and the blue warrant was procured via an invalid arrest warrant, law enforcement officers still legally stopped and seized applicant's vehicle based on the credible report that the vehicle was used in and evidence of a burglary in Randall County. In other words, evidence (an email and crime analysis bulletins) existed independent of the arrest warrant and blue warrant to lawfully stop applicant and to lawfully search and seize his vehicle.

> Since Mr. Coats had already done a thorough job of challenging the arrest warrant, blue warrant, and the removal of the vehicle to Randall County I did not feel there were any other valid grounds on which the vehicle and items inside the vehicle could be suppressed. In a last ditch effort to suppress the iPad, I argued during a pre-trial hearing that the defense never had the opportunity to inspect the iPad. I knew this was a long shot and was not surprised when the trial judge denied my motion to suppress. Since the iPad did not belong to applicant, he had no standing to complain that law enforcement officers accessed and searched the contents of the iPad in order to determine its rightful owner without a search warrant.

> As for why I did not contest the search warrant obtained after the vehicle had already been seized and transported to Randall, I believed the search warrant

was valid and the seizure of the iPad was proper. Although the iPad was not included in the list of the suspected stolen property which was attached to the affidavit for the search warrant, the search warrant did not constitute a mere-evidentiary search warrant under Article l8.02(10) of the Texas Code of Criminal Procedure. Since the search warrant was not a mere-evidentiary search warrant, the limitation on the plain-view doctrine was not invoked. Instead, the search warrant was issued pursuant to Article 18.02(1) and allowed for property to be seized that was acquired by theft or in any other manner which makes its acquisition a penal offense. Since electronics and laptops were identified in the list of suspected stolen property which was attached to the affidavit for the search warrant in this case, I believed that the iPad related to the crimes under investigation and could be properly seized under the plain view doctrine. Therefore, I did not contest the search warrant or the seizure of the iPad based on the allegations raised in applicant's writ application.

(ECF 9-26 at 81–81).

Petitioner has failed to demonstrate that the TCCA's decision that he was not denied the effective assistance of counsel was contrary to or involved an unreasonable application of *Strickland*, because Petitioner has not proven by a preponderance of the evidence that his attorneys' strategic decisions regarding which legal theories to base their motions to suppress on were objectively unreasonable. *See Strickland*, 466 U.S. at 687–88. "A petitioner shoulders a heavy burden to refute the premise that 'an attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance.'" *Boyle v. Lumpkin*, No. 4:20-CV-190-A, 2021 WL 1338856, at *10 (N.D. Tex. Apr. 9, 2021) *(quoting Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985)); *see Strickland*, 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of IAC); *Cotton*, 343 F.3d at 752–53 ("A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."). Petitioner has failed to prove that any of his attorneys made an error "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *See Strickland*, 466 U.S. at 687.

18

An IAC claim may be disposed of for want of either deficient performance or actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 697 (1984); *Ramirez v. Dretke*, 398 F.3d 691, 697 (5th Cir. 2005). As such, Petitioner's claim can be denied for failing to demonstrate deficient performance. Nevertheless, the Court notes that Petitioner also contends, under the second prong of *Strickland*, that he was prejudiced by his attorneys' performance because the illegal search of the iPad allowed law enforcement to connect the iPad to the burglary of Ms. Coffman's home, and that information allowed law enforcement to connect the other stolen items seized from the vehicle to the Coffman burglary, as well. (*Id.* at 23, 27).

However, Mr. Spriggs also addressed this in his affidavit:

> Further, the iPad was not the only evidence linking the alleged victim to the car or its contents. Other evidence, apart from the iPad, connected items in the car directly to this particular victim. Keepsakes awarded for school activities found in the car included a unique piece engraved with the victim's school's initials. This connected the items to the victim because the piece was from a particular place, and awarded for a particular event. Here, unlike ordinary jewelry, the piece was awarded from St. Michael High School, in Santa Fe, New Mexico. I believe the victim testified that the jewelry was kept in the jewelry box in the car.
>
> Photos of the victim's family were also in the car. The people in the photos were not the same ethnicity as [Petitioner].

(ECF 9-26 at 82). As such, there was obviously suspicious evidence found in Petitioner's vehicle that linked him to the Coffman burglary.

Petitioner has not shown that the trial court's ruling would have been different had his trial counsel based their motions to suppress on any of the three legal theories discussed above. Absent such a showing, Petitioner has failed to demonstrate that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694; *see also Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or frivolous objections).

19

Petitioner has not shown that the TCCA, through its adjudication of his IAC claim, issued a decision contrary to or involving an unreasonable application of clearly established federal law. *See Gregory*, 601 F.3d at 351–54; 28 U.S.C. § 2254(d)(1). Accordingly, the Court should deny Petitioner's IAC claim.

## VI.     REQUEST FOR AN EVIDENTIARY HEARING

Petitioner argues that he "was denied a full and fair opportunity to prove his allegations," because the TCCA denied Petitioner's state habeas application without "hold[ing] an evidentiary hearing" and "without a full investigation of the facts or law or consideration of the evidence." (ECF 2 at 28–29; *see* ECF 9-22  – ECF 9-26). Petitioner contends that "the state court could not make [an] accurate determination of the ineffective assistance claims without allowing [Petitioner] to develop them with a hearing. Therefore, this court should reject the state court's opinion and hold a hearing where [Petitioner] is given a full and fair opportunity to prove his claims." (ECF 2 at 30–31).

However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181. Petitioner's instant federal habeas petition concerns only claims under Section 2254(d)(1) that were adjudicated on the merits in state court. As discussed above, Petitioner cannot overcome the limitation of Section 2254(d)(1) on the record that was before the state court. As such, Petitioner is not entitled to an evidentiary hearing.

## VII.     RECOMMENDATION

For the reasons set forth above, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by Petitioner Donald Wayne Lewis be DENIED and that this

case be DISMISSED WITH PREJUDICE.

## VIII.   INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions

and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED June 29, 2021.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).